FILED
2019 Oct-21  PM 03:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DENISE DIBENEDETTO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:19-cv-01223-ACA** |
| **ALLSTATE INSURANCE COMPANY,** | ) | |
| **et al.,** | ) | ***ORAL ARGUMENT REQUESTED*** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR FINAL
SUMMARY JUDGMENT OF
DEFENDANT ALLSTATE INSURANCE COMPANY**

COMES NOW the Defendant, Allstate Insurance Company ("Allstate"), and submits the following Memorandum Brief in support of its Motion for Final Summary Judgment.

**STATEMENT OF UNDISPUTED FACTS**

**The November 4, 2015 Incident**

1.    This case arises from a November 4, 2015 incident between now-deceased John Andrew DiBenedetto ("Andrew"), and John Powell.   Ex. A, (Deposition of John Powell, Doc. 13-1, p. 6).

2.    On that date, between 7:00 and 7:30 p.m., Powell was walking his dog "Little" in the Letson Farms neighborhood of Bessemer, Alabama, near the intersection of South Clubview Circle and Clubview Drive.  Id. at pp. 7-9.

3.      As Powell attempted to cross the street with his dog, the dog got away from him.  Id. at p. 9.

4.      While Powell was looking for his dog in the street, a car drove up very fast and came into the lane where Powell was standing.  Powell described it as if "[the driver] was trying to scare [him]."  Id. at p. 10.

5.      The driver, later identified as Andrew, came "flying up" toward Powell, slammed on his brakes, and exited his vehicle.  Id.

6.      According to Powell, Andrew yelled at him to get his "d*** dog out of the street."  Id.

7.      Powell said something to Andrew about his rate of speed, and a verbal argument ensued.  Id. at p. 10-11.

8.      Ultimately, after some neighbors came outside, DiBenedetto sped off, but not before doing some "donuts" in the intersection.  Id. at p. 11.

9.      At that point, Powell cut his walk short and headed for home.  Id.

10.     Just as he approached his residence, Powell heard Andrew's car approaching.  He testified that the car was an older vehicle that "made a lot of racket" and he could hear Andrew "gunning that engine."  Id. at p. 12.

11.     Powell drove his vehicle at a high rate of speed directly toward Powell, aiming for him.  When Andrew had driven very close to Powell, he "slammed on his brakes and started sliding" toward Powell.  Id. at p. 13-14.

12.    Powell stood behind a nearby mailbox to protect himself from Andrew, and Andrew crashed into the mailbox.  Id.  Andrew came to rest approximately "two steps" from Powell.  Id. at p. 14.

13.    At that point, Powell noticed that Andrew had a friend with him in the vehicle. Both men jumped out of the car and ran toward Powell.  Id.

14.    As Andrew ran at Powell, he had his arms outstretched, attempting to grab Powell.  Id. at p. 15.

15.    After Powell was able to subdue Andrew, he warned Andrew's friend to keep his distance.  Id. at p. 16.

16.    Powell told Andrew to "get on out of here," but before Andrew left, he grabbed Powell's glasses and yelled, "Hey look old man!" as he snapped the glasses in half.  Id. at pp. 16-17.

17.    Andrew and his friend then drove away.  Powell followed them for a short distance and saw them park in the DiBenedetto's driveway, just around the corner.  Id. at p. 17.

**The Criminal Charges**

18.    As a result of the November 4, 2015 incident, Powell brought criminal charges against DiBenedetto, including harassment and criminal mischief.  Ex. B (Affidavit/Warrant – Harassment, Doc. 13-2 (also marked as Defendant's Exhibit 1

in Deposition of Powell)); Ex. C (Affidavit/Warrant – Criminal Mischief, Doc. 13-3 (also marked as Defendant's Exhibit 2 in Deposition of Powell)).

19.     DiBenedetto ultimately pleaded guilty to both charges on January 20, 2016.  Ex. D (District Court Orders, Doc. 13-4).

20.     Defendant received a suspended sentence of 24 months of probation for both charges.[1]  Id.

**The 2016 Lawsuit**

21.     On November 4, 2016, Powell filed a civil suit against Andrew and Andrew's parents as a result of the incident.  Ex. E (Powell's Complaint, Doc. 13-5).

22.     Powell asserted the following claims in his Complaint: (1) assault; (2) battery; (3) conversion; (4) wantonness; (5) outrage; (6) negligent entrustment; and (7) conspiracy.  Id.

23.     The father, Mr. DiBenedetto, was granted summary judgment, but the summary judgment motion of Mrs. DiBenedetto (Plaintiff herein) was denied as she was the owner of the vehicle that Andrew was driving.

---

[1] DiBenedetto appealed his sentences to the Circuit Court of Jefferson County, Bessemer Division, but he died during the pendency of his appeal.

24.     Powell and Mrs. DiBenedetto ultimately settled the civil suit for an undisclosed amount in March 2019.  Ex. F (Court's April 1, 2019 Order, Doc. 13-6).

**Claim Denial and Subsequent Lawsuit**

25.     The vehicle driven by Andrew was owned by his mother, Denise DiBenedetto (hereinafter "Plaintiff").  Ex. G (Affidavit of Plaintiff filed in the Powell case, Doc. 13-7).

26.     Plaintiff had a policy of insurance for the subject vehicle with Allstate. Ex. H (Plaintiff's Complaint, Doc. 13-8, ¶3).

27.     Allstate issued a "Reservation of Rights" letter to Ms. DiBenedetto on March 27, 2017 and agreed to provide a defense to her in the Powell case subject to the terms of the reservation of rights.  Ex. I (March 27, 2017 Correspondence to Plaintiff, Doc. 13-9).

28.     In that letter, Allstate specifically quoted the intentional/criminal acts exclusion contained within Ms. DiBenedetto's Policy, which provides as follows:

> **Exclusions—What is Not Covered**
>
> **Allstate** will not pay for any damages an **insured person** is legally obligated to pay because of:
>
> . . . .
>
> 10.     **bodily injury** or property damage intended by, or reasonably expected to result from, the intentional or

5

criminal acts <u>or</u> omissions of an **insured person**. This exclusion applies even if:

    a.    an **insured person** lacks the mental capacity to control or govern his or her conduct;

    b.    an **insured person** is temporarily insane or temporarily lacks the mental capacity to control or govern his or her conduct or is temporarily unable to form any intent to cause **bodily injury** or property damage;

    c.    such **bodily injury** or property damage is of a different kind or degree than intended or reasonably expected; or

    d.    such **bodily injury** or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether an **insured person** is actually charged with, or convicted of, a crime.

This exclusion precludes coverage for any <u>insured</u> person under the policy <u>regardless of whether the person seeking coverage participated in any way in the intentional or criminal acts or omissions</u>. Ex. J, (Allstate Policy, Doc. 13-10, p. 029) (emphasis added).

29.    Allstate ultimately issued a denial of coverage and defense to Mrs. DiBenedetto on April 6, 2017, after Andrew pleaded guilty to harassment and criminal mischief. Ex. K (April 6, 2017 Denial Letter, Doc. 13-11).

30.    In denying the claim, Allstate again referenced the criminal acts exclusion. <u>Id.</u>

31.    As counsel for Ms. DiBenedetto continued to maintain that Allstate owed her a defense under her policy, Allstate retained outside coverage counsel to provide a coverage opinion.

32.    Attorney Mark Hart thoroughly reviewed Allstate's file and determined that no coverage was due, citing the criminal acts exclusion.  Ex. L (Correspondence of January 28, 2019 from Mark Hart to Stan Brobston, Doc. 13-12).

33.    Mrs. DiBenedetto settled with Powell and then filed the instant suit against Allstate on April 17, 2019, claiming breach of contract and "bad faith." (Ex. H, Doc. 13-8).

34.    Specifically, Plaintiff alleges that Allstate "failed to perform their obligations under said contract in good faith," "refused to provide the Plaintiff with a defense to said Powell action and failed to indemnify her as required under the terms of said insurance contract." Id. at ¶8.

## ARGUMENT

## I.    PLAINTIFF'S ALLSTATE POLICY DID NOT PROVIDE ANY COVERAGE OR DUTY TO DEFEND PLAINTIFF FOR THE POWELL CLAIMS.

The law in Alabama is clear that insurance companies have the right, in the absence of statutory provisions to the contrary, to limit their liability and write policies with narrow coverage.  Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co., 272 So.2d 232, 235 (Ala. 1972).  It is also true that courts must enforce

insurance contracts as written and cannot defeat express provisions in a policy, including exclusions, by judicial interpretation. Id.

Plaintiff does not challenge Allstate's denial of coverage/defense to her son, Andrew.  However, Plaintiff claims that since the Powell complaint alleged that she "negligently entrusted" the vehicle to Andrew, this triggered at least a duty to defend. Plaintiff ignores the complete language of the exclusion at issue.

Here, as outlined in Allstate's Statement of Undisputed Facts, the policy at issue includes an exclusion for "bodily injury or property damage" resulting from "the intentional or criminal acts or omission of an insured person." Ex. J, Doc. 13-10, p. 029.  Importantly, the exclusion specifically states that it precludes coverage for "any insured person under the policy regardless of whether the person seeking coverage participated in any way in the intention or criminal acts or omissions." Id. (emphasis added).

It is undisputed that the claim for which Plaintiff is seeking coverage and defense arises from her son Andrew's both intentional and criminal conduct in the incident with Mr. Powell.  As Powell testified, Andrew "aimed" for him as he sped down the street, turning his vehicle to go up on the sidewalk where Powell was standing.  Ex. A, Doc. 13-1, pp. 13-14. Likewise, the act of picking up Powell's glasses and defiantly snapping them in half in front of Powell was also intentional Id. at pp. 16-17.  Not only was the conduct intentional—which would satisfy the

requirements of the policy exclusion—it was criminal, as evidenced by the charges brought against Andrew and his ultimate guilty pleas.  Ex. B (Doc. 13-2); Ex. C (Doc. 13-3); Ex. D (Doc. 13-4).

Furthermore, it is of no consequence that Mrs. DiBenedetto, the Plaintiff in the instant case, did not participate in the November 4, 2015 events, because, by the exclusion's plain language, it applies even if the person seeking coverage did not participate in the criminal conduct.  See Ex. J, Doc. 13-10, p. 029.  It is clear that the intentional/criminal acts exclusion applies in the instant case and bars any duty of Allstate to either provide coverage or a defense to the Powell suit for Mrs. DiBenedetto.  The Allstate policy was never intended to insure anyone against the commission of crimes or intentional acts.

It is well-settled in Alabama that Allstate's criminal/intentional acts exclusion is enforceable and does not violate public policy.  See Hooper v. Allstate Ins. Co, 571 So.2d 1001, 1003 (Ala. 1990) (collecting cases from other jurisdictions interpreting Allstate's criminal acts exclusion).  In Hooper, Mr. Hooper was visiting his friend Mize at Mize's home, where the two men were discussing a potential hunting trip.  Id. at 1002.  Both men had been drinking, and Mize was handling a shotgun.  Id.  Mize accidentally shot Hooper in the face, causing severe injuries.  Id. Mize ultimately pleaded guilty to second degree assault.  Id.

Mize's parents had homeowner's insurance through Allstate, which contained an almost identical criminal acts exclusion to the one at issue here.  See id.  Allstate filed a declaratory action, seeking a determination that it was not obligated to defend Mize or pay any judgment rendered against him.  Id.  Allstate ultimately moved for summary judgment, which the trial court granted.  Id.  On appeal, Hooper argued that the policy language was ambiguous, and only applied to *intentional* criminal acts, but the Supreme Court disagreed.  Id.  In upholding the trial court's ruling, the Court stated as follows:

> A number of other jurisdictions have held that the same exclusion was unambiguous and excluded coverage for injuries resulting from criminal acts by the insured, regardless of whether the insured intended to commit the act or to cause the harm.
>
> . . .
>
> . . . Insurance companies have the right to limit their liability and to write policies with narrow coverage.  No public policy considerations dictate that an insurer must indemnify a third party for the criminal acts of an insured.
>
> . . .
>
> Because the exclusion unambiguously excluded coverage for injury or damage that might reasonably be expected to result from criminal acts by an insured, without a requirement that the acts be intentional or that the injury be intended, and because Mize's action fell squarely within that exclusion, Allstate was under no duty to defend Mize or indemnify Hooper for his injuries.

Id. at 1003.

The Alabama Supreme Court's holding in Hooper is controlling in the instant case.  Like Mr. Mize in the Hooper case, Andrew was covered by an Allstate insurance policy containing an intentional or criminal acts exclusion.  Like Mize in the Hooper case, Andrew was charged with, and pleaded guilty to, certain criminal charges arising from his altercation with Powell.  Here, however, the facts weigh even more strongly in favor of application of the exclusion, because Andrew's crimes require criminal intent.  See Ex. M (Code of Alabama §§13A-7-22, 13A-11-8(a), Doc. 13-13).

The case of Alfa Specialty Ins. Co. v. Jennings, 906 So.2d 195 (Ala. Civ. App. 2005) is also instructive.  That case involved a similar policy exclusion in an auto insurance policy.  See Jennings, 906 So.2d at 197.  In that case, the insured, Croft, led police on a high-speed chase.  Id. at 196.  Upon encountering a roadblock, Croft left the roadway, lost control of his vehicle, and crashed into a mobile home, causing almost $20,000.00 in property damage to the home.  Id.  Croft was charged with and ultimately pleaded guilty to aggravated fleeing, reckless endangerment, and carrying a pistol in a vehicle without a permit.  Id.

Alfa filed a declaratory action, asking the trial court to determine that it was not obligated to pay Croft for his claimed medical expenses, and that it did not owe him a defense in any action brought by the owners of the mobile home, pursuant to the criminal acts exclusion in his auto policy.  Id. at 196-97.  Alfa later filed a motion

for summary judgment on these same grounds. Id. at 197. In response, the mobile-home owners argued that the exclusion was unenforceable because it violated public policy. Id. at 197-98. The trial court ruled in favor of the mobile-home owners, and Alfa appealed. Id. at 198.

Citing Hooper, the Alabama Court of Civil Appeals first noted that "[i]nsurance companies have the right to limit the coverage offered through the use of exclusions in their policies." Id. at 199 (quoting Hooper, 571 So.2d at 1002). The Court then went on to determine that Alfa's intentional or criminal acts exclusion was not contrary to public policy, under the particular facts of the case, and was due to be enforced to deny coverage to the insured. Id. at 202.

Courts from other jurisdictions have discussed the same or essentially similar exclusions. For example, in Allstate Ins. Co. v. Brown, 16 F.3d 222, 226 (7th Cir. 1994), the court stated as follows regarding the Allstate intentional/criminal acts exclusion:

> [W]e are not the first jurisdiction to interpret the Allstate exclusion at issue here. Many other jurisdictions have addressed the meaning of the intentional or criminal acts exclusion and have found it unambiguous and providing an objective standard. See Allstate Ins. Co. v. Cruse, 734 F.Supp 1574, 1581 (M.D. Fla. 1989) (exclusion requires court to apply objective standard); Allstate Ins. Co. v. Bailey, 723 F.Supp 665, 667 (M.D. Fla. 1989); Allstate Ins. Co. v. S.L., 704 F.Supp. 1059, 1060 (S.D. Fla. 1989) (aff'd, 896 F.2d 558 (11th Cir. 1990); Allstate Ins. Co. v. Travers, 703 F.Supp 911, 915 (N.D. Fla. 1988) (exclusion incorporates an objective test); Allstate Ins. Co. v Foster,

12

693 F. Supp. 886, 888 (D. Nev. 1988) (exclusion is unambiguous and provides an objective standard); Hooper v. Allstate Ins. Co., 571 So. 2d 1001, 1002-03 (Ala. 1990); Allstate Ins. Co. v. Schmitt, 238 N.J. Super. 619, 570 A.2d 488, 490-492 (N.J. Sup. Ct. App. Div.), cert. denied, 122 N.J. 395, 585 A.2d 394 (N.J. 1990); and Allstate Ins. Co. v. Sowers, 97 Ore. App. 658, 776 P.2d 1322, 1323 (Or. Ct. App. 1989).

Clearly, based on the foregoing caselaw, there is no colorable argument that the intentional/criminal acts exclusion in Plaintiff's policy does not apply to DiBendetto's conduct. Therefore, the intentional and criminal acts of Andrew on November 4, 2015 are excluded from coverage under his mother's Allstate policy. Because Plaintiff cannot demonstrate a genuine issue of material fact, and as such, Allstate is entitled to judgment as a matter of law.

## II. EVEN IF, ARGUENDO, THE NOVEMBER 4, 2015 INCIDENT WAS A COVERED LOSS, PLAINTIFF CANNOT ESTABLISH THE PRIMA FACIE ELEMENTS OF THE CLAIM OF "BAD FAITH" AS ALLSTATE CLEARLY HAD AN "ARGUABLE, DEBATABLE BASIS" FOR ITS CLAIM DECISION.

This court need not decide this issue if it agrees with Allstate that the intentional or criminal acts exclusion worked to deny coverage and a duty to defend Mrs. DiBenedetto for the claims made by Powell. However, if arguendo, the court disagrees, the undisputed facts dictate at least the grant of summary judgment to Allstate on the "bad faith" claims of Plaintiff.

In Alabama, "bad faith" can only be found when an insurer lacks a legitimate or arguable reason for failing to pay a claim. National Savings Life Ins. Co. v.

Dutton, 419 So.2d 1357, 1361 (Ala. 1982).  "When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." Id. (quoting National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1982)).

It is the general rule that in order to show a lack of debatable reason, the insured must be entitled to a directed verdict on the contract claim.  Insurance Company of North America v. Citizens Bank of Thomasville, 491 So.2d 880 (Ala. 1986).  The Plaintiff bears the heavy burden of proving actual knowledge of no debatable reason to deny the claims coupled with intent to injure.  Davis v. Cotton States Mutual Ins. Co., 604 So. 2d 354 (Ala. 1992).

Stated differently, "an insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact." Chavers v. National Security Fire Ins. Co., 405 So. 2d 1 (Ala. 1981).  To show that no lawful basis exists requires evidence that "the insurer lacks a legitimate or arguable reason for failing to pay the claim." Gulf Atlantic Life Ins. Co. v. Barnes, 405 So. 2d 916 (Ala. 1981).  "The insured must eliminate any arguable reason propounded by the insurer for refusing to pay the claim." Lefevre v. Westberry, 590 So.2d 154, 159 (Ala. 1991) (emphasis added) (quoting Burns v. Motors Ins. Corp., 530 So.2d 824, 827 (Ala. Civ. App. 1987)).

In <u>Weaver v. Allstate Insurance Co.</u>, 574 So. 2d 771 (Ala. 1990), the insurer denied a claim for uninsured motorist benefits.  The Supreme Court addressed the Trial Court's entry of Summary Judgment in favor of the insurer on the claim of "bad faith."  While recognizing that conflicting evidence would create a triable issue on liability for the uninsured motorist benefits, the Court concluded that there was <u>no triable issue on the question of Allstate's bad faith refusal to pay benefits</u>:  "If any one reason for denial of coverage is at least "arguable", this Court need not look any further, and a claim for bad faith refusal to pay will not lie."  <u>Id.</u> at 774 (citing <u>McLaughlin v. Alabama Farm Bureau Mutual Casualty Ins. Co.</u>, 437 So. 2d 86, 91 (Ala. 1983)).

**A.      Allstate had a reasonable basis for the denial based on the intentional/criminal acts exclusion set out in Plaintiff's policy.**

As outlined above, the basis for Allstate's denial of a defense to Ms. DiBenedetto was the criminal acts exclusion in her policy.   "Alabama law is unambiguous on the point that nothing requires an insurer to indemnify a third party for the insured's criminal acts."  <u>Horace Mann Ins. Co. v. Fore</u>, 785 F.Supp. 947, 949 (M.D. Ala. 1992).  Alabama law recognizes that "insurance companies have the right to limit the coverage offered through the use of exclusions in their policies, provided that those exclusions do not violate a statute or public policy." <u>Hooper v. Allstate</u>, 571 So.2d 1001, 1002 (Ala. 1990) (internal citations omitted).  Further, "if an individual purchases a policy containing an unambiguous exclusion that does not

violate a statute or public policy, courts will enforce the contract as written." Id. (citing Johnson v. Allstate Ins. Co., 505 So.2d 362, 365 (Ala. 1987)).

The Alabama caselaw cited above is clear that Allstate's criminal/intentional acts exclusion is enforceable and does not violate public policy.  See Hooper, 571 So.2d at 1003 (collecting cases from other jurisdictions interpreting Allstate's criminal acts exclusion).  Therefore, Allstate had much more than an "arguable" basis for denying Plaintiff's claim and could not have acted in "bad faith."

**B.      Allstate obtained the advice of counsel during the pendency of the claim and ultimately followed the well-reasoned advice of coverage counsel in completing its investigation.**

Furthermore, in evaluating DiBenedetto's demand for defense, Allstate sought the advice of counsel.  The employment of legal counsel and reliance upon the lawyer's advice constitutes evidence of good faith and reflects the measures which Allstate took in deciding whether to accept or deny the Plaintiffs' claim.  See Davis v. Cotton States Mut. Ins. Co., 604 So.2d 354, 359 (Ala. 1992).

In Davis, the Alabama Supreme Court addressed the defense of advice of counsel.  Id. at 359.  There, Davis alleged that the insurance company acted "in bad faith" by refusing his claim for uninsured motorist benefits.  Id. at 355.  The trial court granted summary judgment in favor of the insurance company, and Davis appealed.  Id.  The insurance company submitted evidence that they had employed a lawyer to research the issue of coverage under the policy in question.  Id. at 359.  The

16

record demonstrated that the insurance company followed the advice of their lawyer in reaching a conclusion that Davis was not entitled coverage.  Id.  Importantly, the Court noted: "In other circumstances reliance on the advice of informed counsel has often been sufficient in itself to establish good faith or to rebut a claim of bad faith." Id. (citing Lynch v. Green Tree Acceptance, Inc., 575 So.2d 1068 (Ala. 1991); Hanson v. Couch, 360 So.2d 942 (Ala. 1978); and Uphouse v. Charter Hospital of Mobile, 582 So.2d 1140 (Ala. Civ. App. 1991)). The Court went on to conclude that the insurance company acted in good faith to legitimately determine the coverage issues presented and specifically noted that its efforts included the employment of legal counsel to help in resolving the issues.  Id. at 359-60.  Thus, an arguable basis for denial was demonstrated and summary judgment was affirmed.  Id.

Here, Allstate likewise sought a legal opinion.  In so doing, Attorney Mark Hart was provided with the relevant file materials and policy information.  After applying the law to the facts presented, Mr. Hart concluded that Allstate had no obligation to defend Plaintiff under her policy.  Ultimately, Allstate followed the well-reasoned and fully informed advice of Mr. Hart.  Under the authority set forth above, and in light of the other arguable and debatable bases for Allstate's denial, Allstate is entitled to summary judgment as to Plaintiff's claims of "bad faith."

## CONCLUSION

Allstate had no duty to provide coverage for or defend Mrs. DiBenedetto in the <u>Powell</u> case.  Under the undisputed facts of the case, Allstate as a matter of law is not guilty of "bad faith" failure to defend and/or provide coverage to Mrs. DiBenedetto.  Allstate therefore respectfully requests that this Honorable Court enter an Order granting Allstate's Motion for Final Summary Judgment.


EXECUTED this the 21st day of October, 2019.

Respectfully submitted,

*/s/ De Martenson*
De Martenson (ASB-7317-N69E)

*/s/ Madison D. Morrison*
Madison D. Morrison (ASB-7897-E99A)

<u>**OF COUNSEL:**</u>
HUIE, FERNAMBUCQ & STEWART, LLP
3291 US Highway 280, Suite 200
Birmingham, Alabama   35243
Telephone:  (205) 251-1193
Facsimile: (205) 251-1256
DMartenson@huielaw.com
MMorrison@huielaw.com

Attorneys for Defendant,
ALLSTATE INSURANCE COMPANY.


**_ORAL ARGUMENT IS REQUESTED._**

## CERTIFICATE OF SERVICE

I hereby certify that I have either electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to those attorneys registered, and/or I have forwarded by E-Mail or placed a copy of the foregoing to the attorneys as follows in the United States Mail, postage prepaid and properly addressed, on this the 21st day of October, 2019:

> Stan Brobston, Esq.
> stanbrobston@xspedius.net
> Attorney at Law
> 304 North 18th Street
> Bessemer, AL  35020
> Tel:  (205) 425-4361
> *Attorney for Plaintiff*

> */s/ De Martenson*
> Of Counsel