IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DENISE DIBENEDETTO,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | 2:19-cv-01223-ACA |
| ] | |
| **ALLSTATE INSURANCE** ] | |
| **COMPANY,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION AND ORDER

Before the court are cross-motions for summary judgment filed by Defendant Allstate Insurance Company ("Allstate") (doc. 12) and Plaintiff Denise DiBenedetto ("Ms. DiBenedetto") (doc. 18).

Ms. DiBenedetto owned a vehicle insured by Allstate. (Doc. 13-7 at 2). Ms. DiBenedetto's son, Andrew, used the vehicle on November 4, 2015. (*Id.*). That evening, Andrew got out of the vehicle and physically attacked John Powell. (Doc. 13-1 at 7). Mr. Powell filed a civil suit against Andrew and Ms. DiBenedetto. (Doc. 13-5). Subsequently, Ms. DiBenedetto made a claim for coverage to Allstate. (*Id.*). Allstate originally defended Ms. DiBenedetto in the civil suit under a reservation of rights, but issued a denial of coverage and defense to Ms. DiBenedetto after Andrew pleaded guilty to criminal charges. (Doc. 13-11). Ms. DiBenedetto filed the present lawsuit, alleging breach of contract and bad faith. (Doc. 13-8).

1

Allstate moved for summary judgment on all claims. (Doc. 12). Ms. DiBenedetto moved for partial summary judgment as to the breach of contract claim (doc. 18), and conceded the bad faith claim (doc. 19 at 15–16). For the reasons explained below, the court **GRANTS** Allstate's motion for summary judgment and **DENIES** Ms. DiBenedetto's motion for partial summary judgment. The court will enter judgment as a matter of law in favor of Allstate on all of Ms. DiBenedetto's claims.

I.  BACKGROUND

On cross-motions for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1239 (11th Cir. 2018) (quotation marks omitted).

On November 4, 2015, John Powell ("Mr. Powell") went for a walk with his dog. (Doc. 13-1 at 5). While crossing a street, the dog ran off. (*Id.*). As Mr. Powell looked for his dog in the street, Andrew DiBenedetto ("Andrew") approached Mr. Powell in the vehicle owned by Ms. DiBenedetto. (Doc. 13-1 at 5–6). Andrew came "flying up" in the same lane where Mr. Powell stood, slammed on his brakes, and started cursing at Mr. Powell. (*Id.*). Andrew and Mr. Powell exchanged words. (*Id.* at 6). Andrew drove away after doing a "couple of donuts" in the intersection. (Doc. 13-1 at 6). Mr. Powell quickly proceeded to make his way home. (*Id.*).

As Mr. Powell approached his home, Andrew drove his vehicle directly toward Mr. Powell at a high rate of speed. (Doc. 13-1 at 6). Once Andrew neared Mr. Powell, Andrew slammed on his brakes, landing "two steps" away from Mr. Powell. (*Id*. at 7). Andrew then got out of the vehicle and attempted to grab Mr. Powell. (*Id.*). Andrew grabbed Mr. Powell's glasses, snapped them in half, returned to his vehicle, and drove off. (Doc. 13-1 at 7–8).

Mr. Powell pursued criminal charges against Andrew. (Doc. 13-2; Doc. 13-3). Andrew pleaded guilty to criminal mischief and harassment. (Doc. 13-4 at 2–3). Mr. Powell also filed a civil suit against Andrew and Ms. DiBenedetto in state court ("Powell Lawsuit"). (Doc. 13-5). The Lawsuit asserted the following claims against Andrew: (1) assault; (2) battery; (3) conversion; (4) wantonness; (5) outrage; and (6) conspiracy. (*Id.*). The Lawsuit also asserted a negligent entrustment claim against Ms. DiBenedetto. (*Id.*). The parties settled the Powell Lawsuit. (Doc. 13-6).

Ms. DiBenedetto had an auto insurance policy for the subject vehicle with Allstate ("the Policy"). (Doc. 13-8 at 3 ¶ 3). The Policy provides that Allstate "will pay damages which an insured person is legally obligated to pay because of . . . bodily injury sustained by any person." (Doc. 13-10 at 28) (emphasis omitted). The Policy protects "an insured person from liability for damages arising out of the . . . use . . . of an insured auto." (*Id.*) (emphasis omitted).

The Policy also provides that Allstate "will defend an insured person sued as a result of a covered accident involving an insured auto," but Allstate "will not defend an insured person sued for damages arising out of bodily injury . . . which is not covered by this policy." (*Id.*) (emphasis omitted).

Pursuant to the Policy, Allstate notified Ms. DiBenedetto that Allstate would defend her in the Powell Lawsuit, subject to a reservation of rights. (Doc. 13-9 at 2–4). In the reservation of rights letter, Allstate cited the intentional or criminal acts exclusion contained within the Policy. (*Id.* at 2–3). That exclusion states that Allstate "will not pay for any damages an insured person is legally obligated to pay because of . . . bodily injury . . . intended by, or reasonably expected to result from, the intentional or criminal acts or omissions of an insured person." (Doc. 13-10 at 29–30) (emphasis omitted). The Policy explains that the exclusion "precludes coverage for any insured persons under the policy regardless of whether the person seeking coverage participated in any way in the criminal acts or omissions." (*Id.* at 30) (emphasis omitted).

After Andrew pleaded guilty to harassment and criminal mischief, Allstate issued a denial of coverage and defense, citing "a deliberate or criminal act that is excluded by the policy." (Doc. 13-11). This lawsuit followed.

## II. DISCUSSION

In deciding cross-motions for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Fort Lauderdale Food Not Bombs*, 901 F.3d at 1239. In the present case, Ms. DiBenedetto acknowledges that the issues presented in her motion for partial summary judgment are identical to the issues Allstate presents in Allstate's motion for summary judgment. (Doc. 19 at 1). Ms. DiBenedetto requests that the court consider her motion as a response to Allstate's motion. (*Id.*). Allstate takes the same approach; Allstate's response to Ms. DiBenedetto's motion also serves as Allstate's reply to Ms. DiBenedetto's response. (Doc. 20).

Ms. DiBenedetto alleges that Allstate breached the Policy and acted in bad faith by failing to defend and indemnify her in the Powell Lawsuit. (Doc. 1-1 at 4). Allstate contends that, even if Allstate breached the contract, Allstate had an arguable reason for failing to defend and, therefore, did not act in bad faith. (Doc. 14 at 13–14). Because Ms. DiBenedetto concedes that Allstate's motion for summary judgment is due to be granted on her bad faith claim (doc. 19 at 14), the court addresses only the breach of contract claim. The court addresses each motion, in turn.

1. Allstate's Motion for Summary Judgment

Allstate contends that it does not owe a duty to defend Ms. DiBenedetto against the Powell Lawsuit's claim of negligent entrustment because the Policy precludes coverage. (Doc. 14 at 7). Specifically, Allstate contends that the negligent entrustment claim arises from Andrew's intentional and criminal conduct and, thus, is excluded from coverage. (Doc. 14 at 8; Doc. 20). For the reasons discussed below, the court **GRANTS** Allstate's motion.

"An insurer's duty to defend can be more extensive than its duty to pay." *American States Ins. Co. v. Cooper*, 518 So. 2d 708 (Ala. 1987). In coverage disputes, the insured bears the burden of proving coverage exists. *Jordan v. Nat'l Acc. Ins. Underwriters Inc.*, 922 F.2d 732, 735 (11th Cir. 1991). The insurer, on the other hand, bears the burden of establishing that an exclusion precludes coverage for a claim. *Jordan*, 922 F.2d at 735; *see also Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001). Policy exclusions "must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and must be construed most strongly against the company that drew the policy and issued it." *Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 805 (Ala. 2012) (citation omitted). However, the court must enforce the policy language "as written" and "cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties." *Nationwide*, 103 So. 3d at 805.

Allstate has established that the intentional or criminal acts exclusion precludes coverage for the negligent entrustment claim. The Policy contains a provision titled "Exclusions—What is Not Covered," which excludes from coverage "bodily injury or property damage" resulting from "the intentional or criminal acts or omissions of an insured person." (Doc. 13-10 at 30). This exclusion precludes coverage for "any insured persons," "regardless of whether the person seeking coverage participated in any way in the intentional or criminal acts or omissions." (*Id*.). The parties do not dispute that Ms. DiBenedetto is an "insured person" within the meaning of the Policy (doc. 14 at 5; doc. 19 at 1–2), or that the exclusion applies with respect to claims against Andrew based on his intentional or criminal acts (doc. 19 at 4–5).

By the plain language of the Policy, the intentional or criminal acts exclusion applies to all claims resulting from the intentional or criminal acts of "any insured," even where a claim is based in negligence and asserted against a co-insured. The claim of negligent entrustment against Ms. DiBenedetto is derivative of, not independent of, Andrew's misconduct. Whether Ms. DiBenedetto "participated in any way" in Andrew's intentional or criminal acts is immaterial; the Policy precludes coverage for "any insured persons." The Policy does not require Allstate to defend "an insured person sued for damages arising out of bodily injury or property damage which are not covered by this policy." (Doc. 13-10 at 28). Allstate has met its

burden of establishing that the intentional or criminal acts exclusion precludes coverage for the negligent entrustment claim against Ms. DiBenedetto. Accordingly, Allstate owes no duty to defend Ms. DiBenedetto against the Powell Lawsuit's claim of negligent entrustment.

### 2.  Ms. DiBenedetto's Motion for Partial Summary Judgment

Ms. DiBenedetto contends that Allstate owes a duty to defend against the Powell Lawsuit's claim of negligent entrustment because the claim "arises out of [her] . . . permitting the use of the vehicle." (Doc. 19 at 5). Ms. DiBenedetto relies on Policy language explaining that the Policy provides coverage for damages "arising out of the ownership, maintenance or use, loading or unloading of an Insured auto." (Doc. 13-10 at 28). Ms. DiBenedetto fails to meet her burden of proving that coverage exists. *Jordan*, 922 F.2d 732, 735 (11th Cir. 1991).

Intentional and/or criminal conduct occurring after an individual exits a vehicle does not constitute "use" of an insured automobile. *See, e.g., Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 380 (Ala. 1996) (insured's injuries from battery by another motorist after they had exited their vehicles did not "arise out of the ownership, maintenance, or use of an uninsured auto"); *Lehman United States Fidelity & Guaranty Co. v. Lehman*, 579 So. 2d 585, 586 (Ala.1990) (because Plaintiff's injuries were the result of an independent criminal act by the insured, they did not result from a "use" of the automobile). Intentional and/or criminal conduct,

such as a battery or assault, constitutes an intervening act that breaks the causal connection between the use of an automobile and the injury. *Skelton*, 675 So. 2d at 380. Courts also recognize that, for an injurious act to be covered under automobile liability insurance provisions, the act must have been within the contemplation of the insurer and the insured. *Id*.

Andrew's intentional and criminal acts do not constitute "use" of an insured automobile. Andrew acted intentionally when Andrew exited the vehicle, attacked Mr. Powell, and snapped Mr. Powell's glasses. (Doc. 13-1 at 15–17). Andrew's act of getting out of the vehicle and inflicting harm is an event of independent significance that breaks the causal connection between the use of Ms. DiBenedetto's vehicle and Mr. Powell's injuries. When Allstate wrote the Policy, such action was not a foreseeable risk associated with the use of the vehicle. *See Skelton*, 675 So. 2d at 380 ("No reasonable standard would suggest that an automobile insurer intended to insure against such acts."). Andrew's acts are not covered by Allstate's policy.

Even if, as Ms. DiBenedetto contends, the negligent entrustment claim arises out of her permitting the use of the vehicle, the actions alleged in the Powell Lawsuit do not describe an "accident" for which Allstate would owe a duty to defend. Ms. DiBenedetto cites *Tanner v. State Farm* for the proposition that an insurer owes the duty to defend where the complaint against an insured alleges a covered "accident or occurrence." (*See* Doc. 19 at 8; *Tanner*, 874 So. 2d 1058, 1066 (Ala. 2003)). This

9

case is distinguishable from *Tanner*. In *Tanner*, the insuring clause of the policy provided that State Farm would pay for sums resulting in "bodily injury . . . caused by an occurrence . . . ." *Tanner*, 874 So. 2d at 1061–1062. The *Tanner* policy defined "occurrence," in pertinent part, as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury . . . ." *Id*.

Ms. DiBenedetto's Policy does not contain "occurrence" language. Rather, the Policy provides that that Allstate will defend an insured person sued as a result of a covered "accident involving an insured auto." (Doc. 13-10 at 28). Ms. DiBenedetto's Policy does not define "accident," but "accident" is a commonly used word in the legal profession. *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005). In *St. Paul Fire & Marine Insurance Co. v. Christiansen Marine, Inc.*, 893 So. 2d 1124, 1136 (Ala. 2004), the court applied the following definition of "accident" found in Black's Law Dictionary (7th ed. 1999): "An unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated." *See also United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. of Alabama*, 424 So. 2d 569, 572 (Ala.1982) (citing *Employers Insurance Co. of Alabama v. Rives*, 264 Ala. 310, 87 So. 2d 653 (1955) ("The term ["accident"] has . . . been variously defined as something unforeseen, unexpected, or unusual.")).

Nothing in the Powell Lawsuit shows that Ms. DiBenedetto's actions were "unintended or unforeseen" so as to constitute an "accident" under the Policy. Indeed, the facts indicate only intentional action on the part of Andrew. *See Hartford*, 928 So. 2d at 1012 (noting that the allegations in the complaint, "not the legal phraseology, determine whether an insurer has a duty to defend its insured in the action."). The relevant factual allegations include:

> 5. On or about November 4, 2015, the named Defendants, John Andrew DiBenedetto, John DiBenedetto, and Denise DiBenedetto were owners and or operators of the motor vehicle, which involves the basis of said suit.
> 9. Defendant John Andrew DiBenedetto, . . . yelled explicit words back at [Mr. Powell].
> 10. Defendant . . . search[ed] for [Mr. Powell] in the Letson Farms neighborhood.
> 11. Defendant . . drove his car aggressively down Gibson Drive . . . where [Mr. Powell] was continuing to walk his dog.
> 12. . . . Defendant . . . drove the car directly in [Mr. Powell's] direction at a high rate of speed.
> 15. Defendant . . . aggressively charged toward [Mr. Powell].
> 16. Defendant . . . hit [Mr. Powell] in the face several times with his fists.

(Doc. 13-1 at 31–32). Moreover, Mr. Powell's negligent entrustment claim alleges, in relevant part, that Ms. DiBenedetto, "knew or should have known that [Andrew] was incompetent to safely drive said car." (Doc. 13-5 at 9). Information that one "knew or should have known" is unlikely to lead to "something unforeseen, unexpected, or unusual." Thus, the allegations of the Powell Lawsuit do not constitute an "accident" within the coverage of the Policy. (*See* Doc. 13-10 at 28)

11

("We [Allstate] will not defend an insured person sued for damages arising out of bodily injury or property damage which are not covered by this policy.").

Accordingly, based on the evidence before the court, Ms. DiBenedetto fails to meet her burden establishing that the claim constitutes a covered "accident involving an insured auto." As explained above, Allstate has met its burden of establishing that an exclusion precludes coverage for a claim. *See Jordan*, 922 F.2d at 735.

## IV. CONCLUSION

The court **GRANTS** Allstate's motion for summary judgment and **DENIES** Ms. DiBenedetto's partial motion for summary judgment. The court will enter summary judgment in favor of Allstate and against Ms. DiBenedetto on all of her claims. The court will enter a separate final judgment in accordance with this opinion.

DONE and ORDERED this June 24, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE